(64 Misc. Rep. 620.)

### In re COMMISSIONER OF ELECTIONS OF ONONDAGA COUNTY.

(Supreme Court, Special Term, Onondaga County. October, 1909.)

1. ELECTIONS (§ 154*)—NOMINATIONS—PETITION—REFUSAL TO FILE—REVIEW.

On an application to review the ruling of a commissioner of elections refusing to file a petition for the nomination of a candidate, the justice can only pass on such evidence as was before the commissioner or was offered and improperly rejected by him.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 154.*]

2. ELECTIONS (§ 154*)—NOMINATION PETITION—REFUSAL TO FILE—EVIDENCE—PRESUMPTIONS.

Where an election commissioner refused to file a nomination petition, it would be presumed that he acted not only on the evidence before him, but on all papers duly filed in his office and on facts of which courts would take judicial notice.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 154.*]

3. ELECTIONS (§ 135*)—NOMINATION PETITION—CANDIDATES.

Where independent electors adopted a party emblem, nominated a candidate for mayor of the city, and chose a committee to fill the remainder of the ticket, the regular Republican candidate for assemblyman could not procure a petition nominating him for the assembly as an independent candidate under the name and emblem so chosen without the committee's consent, and by first filing the petition acquire the right to have his name on the ticket under such party name and emblem.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 135.*]

4. ELECTIONS (§ 154*)—NOMINATION PETITION—SIGNATURES.

On an application to review an election commissioner's refusal to file a nomination petition, the justice may not, from a mere inspection thereof, reject names and reduce the number of signers below the number fixed by statute by inferring from the similarity of handwriting that different names were signed by the same person; but, where the same name and address appear more than once, it will be presumed that the several signatures represent but one person and will be only counted once.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 154.*]

5. ELECTIONS (§ 144*)—NOMINATION PETITION—SIGNATURES.

Where the same name and address appears on two nominating petitions of different candidates for the same office, the signature on the petition first filed is the one that will be recognized.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 144.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. ELECTIONS (§ 143*)—PRIMARIES—NOMINATION PETITION—SIGNING—QUALIFICATIONS.

Election Law (Consol. Laws, c. 17) § 92, provides for the enrollment of voters at primaries and declares that the book shall be ruled in columns, the first to contain the name of the voter, and the eighth the word "voted" in case the voter votes at the first official primary election of the year. *Held,* that a check mark or the word "voted" in the eighth column opposite the voter's name was not sufficient to disqualify an elector from signing an independent election petition on the theory that he had voted at the primary; it being necessary to such disqualification that he not only voted, but that he voted for a candidate for the office sought to be filled by the petition or for delegates to a convention called to name such a candidate.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 143.*]

7. EVIDENCE (§ 10*)—JUDICIAL NOTICE—GEOGRAPHICAL FACTS.

Judicial notice may be taken that a town or county designated as the residence of a signer of a nomination petition for member of assembly is not within the assembly district, or that a street so designated is without the district, but not that a given number on the street is without the district, where part of the street is within and part without the district.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 11; Dec. Dig. § 10.*]

Summary proceeding to review the determination of the Commissioner of Elections of Onondaga County as to the validity of certificates of nomination of candidates for a public office in his county. Order entered.

Geo. W. O'Brien, for Mr. Roberts.
Richard J. Shanahan, for Mr. Hammond.

ANDREWS, J. I make the following rulings with regard to questions arising in these proceedings:

1. I can only pass upon such evidence, affidavits, and other papers as were before the commissioner of elections, or were offered and improperly rejected by him. My power is limited to a review of his action. Matter of Fairchilds, 151 N. Y. 359, 45 N. E. 943. He is presumed to have acted, however, not only in view of the evidence taken before him and the affidavits presented to him, but in view, also, of all papers duly filed in his office and of such facts as are the subject of judicial notice by the courts.

2. A number of independent electors adopted an emblem, the party name of "Square Deal Party," nominated a candidate for mayor of the city of Syracuse, and a committee representing them was in some way chosen to fill out the remainder of the ticket for the election to be held in November, 1909. Thereupon the regular Republican candidate for the office of assemblyman for the Second district of Onondaga county, Mr. Hammond, procured a petition signed by the proper number of names, nominating him for the assembly as an independent candidate under the name and emblem of the "Square Deal Party." Every member of the committee save one, who was absent, makes affidavit that they never authorized such action; that Mr. Hammond is not satisfactory to them as their candidate; that the party was in part organized to defeat his election; and that they desire the nomination of

a Mr. Roberts. Mr. Roberts had also procured a petition, properly signed, nominating him for the assembly as the "Square Deal" candidate. Both petitions were filed with the commissioner of elections, but that of Mr. Roberts some hours after that of Mr. Hammond. Under these circumstances, the commissioner accepted the petition of Mr. Hammond and rejected that of Mr. Roberts, being governed, as he conceived, by the language of section 125 of the election law (Consol. Laws, c. 17).

In this I must hold he erred. Mere speed in obtaining and filing a certificate is not the only test. If other things are equal, it should control. It is not the intent of the statute, however, that any person, not only without the consent but against the wishes of an independent party, may adopt its name and emblem and force himself upon the ticket as its candidate. In all fairness, a body of men who adopt a name and an emblem have the right to indicate who shall appear as candidates thereunder. How they shall indicate their wishes may not always be clear. No general rule can be laid down. Each case must depend upon the circumstances appearing, among others, the way in which the party is organized. Here, however, where a committee exists charged with the duty of filling the ticket, no doubt exists.

3. It is objected that various petitions should not be accepted because certain names upon them must be rejected, thus reducing the number remaining below that fixed by the statute. It is said that an inspection will disclose that certain signatures are apparently in the same handwriting, and that they should not be counted in determining the number of names upon the petition on which they appear. This question was not raised before the commissioner, nor was any evidence offered before him on the subject. This may not be an answer to the objection. But whether it is or not neither the commissioner nor the court would be justified in finding from a mere inspection of the petition that because of this similarity the different names were signed by the same person. Every presumption is against the commission of such a crime.

4. On some petitions the same name and address appear more than once. The presumption is that the several signatures represent but one person, and but one should be counted.

5. The same name and address appear in some cases upon two petitions naming different candidates for the same office. Section 123 of the election law provides that:

"No person shall join in nominating more candidates for any one office than there are persons to be elected thereto."

The signature on one or the other of such petitions is unauthorized and must be rejected. The presumption is that the two names represent the same person. Practical convenience requires that the signature upon the petition first filed be recognized not the one that appears to be first verified.

6. It is claimed that certain names of persons who had previously participated in party caucuses appear on certain petitions. If a person participates in such a caucus and votes, for instance, for a candidate for member of assembly or for delegates to a convention which is to

nominate such a candidate, he joins in nominating such a candidate and may not thereafter sign a petition for an independent nomination.

There is no proof by affidavit as to the fact alleged. Section 92 of the election law, however, provides for enrollment books for the primaries. These books are ruled in columns, the first of which is to contain the name of the voter, and the eighth the word "voted" in case the voter votes at the first official primary election of the year. These books are filed with the commissioner. In some cases the same name appears on an independent petition and upon an enrollment book, with a check mark opposite it in the eighth column. This is far from raising any inference that the elector whose name is checked voted at the primary. In other cases the name in the enrollment book has "voted" opposite it in the eighth column. Such a circumstance would probably justify the commissioner in holding that such person voted at the primary. But that is not enough. To be disqualified from signing an independent petition, the elector must not only have voted at the primary, but he must have voted for a candidate for the office sought to be filled by the petition, or for delegates to a convention called to name such a candidate. This, the mere fact that an elector voted at a primary does not show.

7. In some cases the names and addresses upon petitions are said to show upon their face that the signers do not reside in the assembly districts for which the candidate is nominated.

The commissioner may take judicial notice of the boundaries of assembly districts, and the geographical situation of towns, wards, and streets in relation thereto. If, therefore, it appears on the face of a petition for the nomination of member of assembly that one of the signers lives in a town or ward not included in the assembly district, or on a street wholly outside its boundaries, such a name should be rejected. But where the residence is given as a certain number on a street which is partly in and partly outside the assembly district, there must be some evidence that the number is outside the district before the name may be rejected. Neither the commissioner nor the court may take notice as to the position of the number on the street.

Ordered accordingly.