(March 18, 1971)

In the Matter of JAMES E. O'DONNELL et al., Respondents, v. DOROTHY CARTLEDGE, as Village Clerk and Commissioner of Elections of the Incorporated Village of New Hyde Park, et al., Respondents, and ALBERT BERNAUER et al., Appellants.—

No opinion. Rabin, P. J., Hopkins and Martuscello, JJ., concur; Munder and Benjamin, JJ., dissent and vote to reverse the judgment, to dismiss the petition and to grant the counterclaim, with the following memorandum: The record in this case indicates that beginning in 1951 there functioned in the Incorporated Village of New Hyde Park a loose-knit independent political organization known as the Independent Party. This independent group filed nominating petitions each election year for the open positions of Mayor and Trustee of the village and operated in a harmonious atmosphere. However, in the latter part of 1970, as a consequence of a dispute over the expenditure of certain village funds and an asserted rise in local real estate taxes caused thereby, a climate of acrimony was precipitated. The gentleman serving as chairman of the group since its inception was deposed, new officers were chosen and the individuals prevailing voted to form a corporation with the name of the "Independent Party of New Hyde Park, Inc." On or about December 31, 1970, a certificate of the incorporation was filed in Albany. Concededly, the filing of such certificate of incorporation confers no rights of any kind in the electoral process and has no status under the Election Law with respect to the right or power to nominate independent candidates, which is governed solely by section 138 of the Election Law. On February 10, 1971 the deposed chairman and his allies filed nominating petitions with the Village Clerk seeking to nominate Bernauer and Iaquinta, two of the appellants, for the office of trustee, as candidates of the "Independent Party", with a wreath as that party's emblem. On February 23, 1971, the "Independent Party of New Hyde Park, Inc." filed its petitions and nominations for positions of trustees, likewise indicating the wreath as its emblem, in the same fashion as the original "Independent Party" had done. The instant

contest arises on the application of the candidates of the incorporated group, nominated by the "Independent Party of New Hyde Park, Inc.", to enjoin appellants Bernauer and Iaquinta from the use of the name "Independent Party" and the use of the wreath as that party's emblem. The learned Justice at Special Term sustained the contention that the new corporate entity was in reality the legal formalization of the old unincorporated group and was, therefore, entitled to the use of the words "Independent Party" on the ballot, as well as the wreath emblem. He noted that appellants Bernauer and Iaquinta had also been nominated by the "Non-Partisan Party" and would not be effaced from the ballot upon the granting of the injunction requested. He further noted that the proof indicated that through the years the two dominant parties in the village were the "Independent Party" and the "Non-Partisan Party" and concluded that if the candidates were left to run on the rival slates of different party names the citizenry of New Hyde Park would have full opportunity to vote without danger of confusion of name or emblem. He concluded that if the "Independent Party" were left on the ballot there would be confusion and that the voters would be unable to choose with any degree of clarity between the candidates of this "Independent Party" and those of the "Independent Party of New Hyde Park, Inc." The validity of an independent nomination springs only from the actions of the signatories on the petitions pursuant to section 138 of the Election Law and no self-constituted group can pre-empt the right to control such nominations and cancel the lawful action of duly qualified signatories acting pursuant to the right conferred by section 138. A choice between competitive petitions has, under some circumstances, been held allowable to the management of an independent campaign in order to prevent interlopers, not in sympathy with the movement, from aborting the movement by purporting to join it, when they are in fact in opposition. Such conflicts usually related to cases where city-wide petitions had been filed and persons not in sympathy with the movement sought to ride the coattails of a popular movement by filing for local offices, such as members of the Senate or Assembly, even though they were in opposition to the city-wide candidates. Where as here, however, a genuine intramural rivalry of persons identified with the movement brings about the conflict, the rule always has been that the first filing is entitled to the identification. No finding was made at Special Term impugning the good faith of either of these groups and indeed this record could not support such a finding, since one group was headed by the Mayor of the village, and the other by the Village Treasurer, who had acted by choice of the group as its unofficial chairman for 20 years until deposed only by reason of intramural conflict. We are not dealing here with interlopers seeking to pirate a name or movement, but with a clear conflict between two groups, each entitled to run under the name and emblem in question. Under such circumstances the law is long established that the group first filing should prevail (*Matter of Commissioner of Elections of Onondaga County*, 64 Misc. 620; *Matter of Rosenfeld* v. *Cohen*, 240 App. Div. 854; see McKinney's Cons. Laws of N. Y., Book 17, Election Law, § 138, and annotations thereunder). The general rules relating to situations such as this are fully discussed in *Matter of Peel* v. *Cohen* (265 N. Y. 312) and more particularly in *Matter of Trosk* v. *Cohen* (262 N. Y. 430). Implicit in the opinion of the Special Term is a finding that special circumstances exist here justifying a departure from the general rule. We find nothing in this record to justify such a deviation from the long-established rule of priority to the first petition filed when both, as here, are in good faith.