subdivisions one and four of section 88 of this act it shall be the duty of the commissioner of correction to ascertain from the aforesaid records whether such person has been committed to the workhouse or county jail within two years next preceding the date of such commitment, for public intoxication, disorderly conduct that tends to a breach of the peace or vagrancy, and to make a written order specifying the date at which such person shall be discharged, as follows, namely: In the case of a person who has not previously been committed for any one of the offenses herein specified within two years next preceding the date of his last commitment, the said order shall direct that such person shall be discharged at the expiration of five days from the date of his commitment; in the case of a person who has been committed once before within the period of two years next preceding the date of his commitment, the said order shall direct that such person shall be discharged at the expiration of twenty days from the date of his commitment; * * * in case of a person who has been committed more than once * * * the said order shall direct that such person shall be discharged at the expiration of a period equal to twice the term of his detention under the last previous commitment, but not, in any event, exceeding 180 days, provided, however. * * *"

It is quite obvious that it was the purpose of the Legislature to vest a measure of discretion in the city magistrate as to the length of imprisonment to be imposed upon a person convicted of a breach of the peace. He might commit the convicted person to the workhouse "to be detained for the term of six months," or "for a definite period not to exceed six months." Where the commitment is in the form prescribed by subdivision 1 of the section—that is, "for a term of six months"— section 91 of the act applies, and the actual length of the term of detention is automatically determined by an ascertainment of the number of former commitments (if any) of the convicted person within the preceding two years. But, when the magistrate in the exercise of his discretion sentences the offender under subdivision 2 of section 88 "for a definite period not to exceed six months," section 91 has no application, and there is no automatic limitation of the term of detention. The best evidence to determine under which subdivision the commitment was made is to be found in the commitment itself which in the present case is "for the period of six months." This is the language used in subdivision 2 of section 88, and indicates that relator was committed under that subdivision. She was consequently not entitled to be discharged under section 91, and there was no reason for directing the defendant to make the required certificate.

The order appealed from must consequently be reversed. All concur.

---

(76 Misc. Rep. 24.)

### In re SWARTHOUT.

### In re RATIGAN.

(Supreme Court, Albany County, at Chambers. March, 1912.)

1. ELECTIONS (§ 121*)—NOMINATIONS—FILING.

  Where, under Election Law (Consol. Laws 1909, c. 17) § 48, as amended by Laws 1911, c. 891, 451 names were requisite to constitute a valid petition for a nomination for membership of the Democratic state committee for the Fortieth senatorial district, and there was received at the Secretary of State's office on the last day for filing designations of nomi-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nation a petition, designating a person for the position, containing 432 names, of which the designation of a number was defective, papers mailed on the last day for filing the designations, but not received at the office of the Secretary of State until the following day, cannot be considered to bring the number of signers up to the requisite 451.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 115; Dec. Dig. § 121.*]

2. ELECTIONS (§ 121*)—NOMINATIONS—FILING.

Election Law (Consol. Laws 1909, c. 17) § 49, subd. 2, as amended by Laws 1911, c. 891, as to the time when certificates of nomination shall be filed in the office of the Secretary of State, is mandatory, and the court will not relieve from accidents or mistakes causing delay in such filing, due to want of diligence on the part of those to whom the filing was intrusted.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 115; Dec. Dig. § 121.*]

In the matter of the designation of Charles H. Swarthout as a candidate for election as member of the Democratic State Committee for the Fortieth Senatorial District, comprising the counties of Cayuga, Seneca, and Cortland, and of the petition whereby said designation is attempted to be made. Charles F. Ratigan, the regularly designated candidate for the position named, files petition asking that the Secretary of State be enjoined from certifying the candidacy of Swarthout for the position. Granted.

Richard C. S. Drummond, for petitioner.
W. R. Hopkins, for Charles H. Swarthout.
James A. Parsons, Deputy Atty. Gen., for Secretary of State.

CHESTER, J. [1] There was received at the office of the Secretary of State on March 11, 1912, the last day under the law for filing designations for party nominations (Election Law, § 49, subd. 2, as amended by Laws 1911, c. 891), a petition designating Charles H. Swarthout as a Democratic candidate for member of the state committee for the Fortieth senatorial district, composed of the counties of Cayuga, Seneca, and Cortland. The petition came in two parts, one from Seneca county, containing 241 names, and one from Cayuga, containing 191 names, a total of 432; none came from Cortland county. On March 12th two other papers came by mail to the office of the Secretary of State, each from Cayuga county, containing the same designation, one having 20 names and the other 18 thereon. It is conceded that under the Election Law (section 48) 451 names were requisite to constitute a valid petition for a party nomination for the position in question, there having been 11,268 votes cast for the Democratic candidate for Governor in that senatorial district at the last gubernatorial election. It is conceded that 11 names on the papers filed in the office of the Secretary of State March 11th cannot properly be counted. Two other names appear to be subscribed thereto twice, which requires the deduction of 2 more names. On one sheet of the papers received from Seneca county containing 16 names the notarial certificate has not been added. Mr. Bishop, one of the signers of that sheet, has testified on the hearing before me that he signed and swore

to the petition before one James H. Clary, a notary public, and that he was present when each of the other persons signed his name on such sheet, and that the affidavit of each of them was taken by such notary. He has omitted, however, to sign the certificate attached thereto to that effect, and the petition was filed with the Secretary of State with such omission and is still in that condition. It is, therefore, on its face, defective to that extent. Many other defects in the petition are urged, which need not be considered, for it is evident that, if the two papers received at the office of the Secretary of State by mail on March 12th cannot be considered to bring the number of signers above the requisite 451, the attempted nomination must fail. Each of the envelopes containing these papers bears the postmark at Auburn, March 11, 1912, one at 5 p. m. of that day, and they were neither of them received at the Secretary's office until the next day, which was one day late. No reason is assigned by the respondents to excuse the delay, except that the law under which they were acting was new and that the magnitude of the task in procuring the requisite number of names was such that the filing could not have been made earlier. It is evident, however, that the parties concerned in the movement to make this nomination were aware of the fact that March 11th was the last day under the law for filing the petition, and that under the statute time is an essential element of any successful working of the scheme of conducting elections thereunder.

[2] The Court of Appeals has held with respect to a similar statute that the statutory requirement as to the time when certificates of nomination should be filed was mandatory, and that the Supreme Court might relieve from accidents or mistakes causing delay in such filing only when the delay was not due to the negligence or fault of the convention making the nomination, or of the party to whom the filing of the certificate was intrusted. Matter of Darling, 189 N. Y. 570, 82 N. W. 438. No such case is presented here. On the contrary, the delay in filing the two last-named papers appears to have been caused by the want of diligence of those having them in charge and with full knowledge of the statutory requirements with respect to the time for filing.

It appears that the Secretary of State, under some misapprehension of the law, has sent forth a certificate of the nomination of Mr. Swarthout to the custodians of primary records of Cayuga and Seneca counties. These custodians should be directed to return these certificates to the Secretary of State, and the application of the petitioner should be granted.

Application granted.