JACOBS, Plaintiff. v. PYLE, Secretary of State, Defendant.

(219 N. W. 247.)

(File No. 6713. Opinion filed April 24, 1928.)

*Martens & Goldsmith,* of Pierre, and *F. E. Snider,* of Faulkton, for Plaintiff.

*Buell F. Jones,* Attorney General, and *R. F. Drewry,* Assistant Attorney General, for Defendant.

*Roy Nord,* of Faulkton and *Frank S. Tait,* of Gettysburg, amici curiæ.

CAMPBELL, J. The counties of Faulk, Potter, and Dewey, in this state, constitute the Thirty-sixth senatorial district, entitled under section 5076, Rev. Code 1919, to elect one state senator. At the November, 1926, general election the total votes cast in said senatorial district for the Republican candidate for Governor were 2,721. Therefore, by virtue of section 7120, Rev. Code 1919, as amended by chapter 113, Laws 1927, in order to place upon the ballot to be used by the Republican party at the oncoming May primary the name of a candidate for selection at such primary as the Republican party nominee for state senator from such joint district, there must have been filed in the office of the secretary of state on or before April 1, 1928, an individual proposal petition in behalf of such candidate, having affixed thereto the signatures of

at least 5 per cent or 137 of the Republican party electors of such joint legislative district.

On March 28, 1928, there was accepted for filing and filed in the office of the secretary of state an individual proposal petition, proposing the plaintiff, Jacobs, for nomination as Republican candidate for the office of state senator from said joint legislative district, and the present proceeding does not in any manner bring in question the sufficiency or regularity of the Jacobs petition or the filing thereof. On March 30, 1928, there was tendered to the secretary of state for filing an individual proposal petition, purporting to propose one Metz as candidate for the Republican nomination for the same office, and on March 31, 1928, there was tendered to the Secretary of State for filing an individual proposal petition, purporting to propose as a candidate for said Republican nomination for said office Hon. Frank Cundill, the present incumbent thereof.

On April 14, 1928, plaintiff instituted the present action by serving and filing summons and verified complaint alleging his own qualifications as a resident and Republican elector of Faulk county in said joint legislative district, setting out the foregoing facts and specifically alleging, with reference to the Metz petition, that the same purported to have affixed the names of 171 persons, and was defective and insufficient in the following particulars appearing upon the face thereof, namely: First, that 20 of said persons were disqualified to sign the Metz petition because they had previously signed the petition filed two days earlier nominating plaintiff as a candidate for the same office, said signatures being affixed to plaintiff's petition at divers dates between March 1st and March 15th, and the same signatures being affixed to the Metz petition at divers dates between March 16th and March 27th; second, that in addition to said 20 duplicate signatures 5 signers of said petition failed to add after their names their voting precinct, post office address, county, and date of signing as required by law; third, that in addition to the duplicate signatures and to those who failed to add the required information, 29 of the signers of said petition failed to affix their signatures with pen and ink or by indelible pencil.

With reference to the Cundill petition, the complaint alleges that it purported to have affixed the names of 144 persons, and

that it was defective and insufficient in the following particular appearing upon the face theerof, namely, that 72 of said signers failed to affix their signatures with pen and ink or by indelible pencil.

The complaint further alleges that, nothwithstanding such facts, defendant threatens to and will, unless restrained, file said Metz and Cundill petitions, and transmit to the county auditors of said joint legislative district the names of said Metz and Cundill, as duly proposed candidates for nomination as the Republican candidate for state senator in said district upon the Republican primary ballot, and the prayer is that the petitions objected to be determined by this court to be insufficient and invalid, and that defendant be enjoined and restrained from filing or recognizing said petitions or acting thereon, or certifying said names as candidates for such Republican nomination, and also for a temporary injunction. The same facts are set up by affidavit, and an order was issued upon such affidavit and the verified complaint to show cause why an injunctional order should not issue.

The matter is now before us upon the order to show cause. Defendant appeared by counsel, but made no countershowing upon the facts and entered no denial of the allegations of the plaintiff. Defendant's sole return to the order to show cause is in the following form:

"Comes now Gladys Pyle, as secretary of state of the state of South Dakota, defendant in the above-entitled action, and for her return to the order to show cause dated April 14, 1928, says that individual candidate proposal petitions of William J. Jacobs, Henry W. Metz, and Frank Cundill, referred to in plaintiff's affidavit and application and said order to show cause, are now on file in the office of the secretary of state and will be produced in court by this defendant at the time of the hearing on said order.

"Wherefore defendant prays that upon the said hearing such order may be made as shall appear just and equitable."

Defendant does not deny that she has determined the petitions in question here to be sufficient, and has filed the same, and is about to certify out the names of the candidate therein mentioned as duly proposed thereby and entitled to be placed upon the primary ballot as candidates for republican nomination. Neither has defendant seen fit by her return to question in any manner

whatever the facts pleaded by plaintiff. The allegations of plaintiff's verified complaint and affidavits stand before us entirely uncontroverted. Defendant was not served with a subpœna duces tecum, but with an order to show cause. She cannot be deemed to controvert plaintiff's allegations as to the facts merely by a statement that she will produce the petitions in court. We will therefore assume the facts to be as plaintiff alleges and proceed to consider the legal questions arising thereon. We may further state that from the oral argument we do not understand that there is any serious, dispute between the parties as to the facts even though defendant's return is entirely insufficient to raise any fact questions.

It is the contention of plaintiff that three classes of names are ineligible to be considered as valid signatures upon the petitions to which he objects: First, those who failed to add after their names their voting precinct, post office address, county, and date of signing (applicable to the Metz petition only); second, those who had previously signed the earlier filed petition of plaintiff (applicable to the Metz petition only); third, those who affixed their signatures by common lead pencil as distinguished from pen and ink or indelible pencil (applicable to both the Metz and Cundill petitions).

Section .7120, Rev. Code 1919, as amended by chapter 113, Laws 1927, providing for individual proposal petitions for candidates for party nomination as legislative candidates from a joint legislative district, reads in part as follows:

"* * * Said individual proposal petition shall be substantially in the same form as provided in section 7117 and shall have affixed thereto the signatures of at least five per cent of the party electors of the joint legislative district, with the same requirement as to form of execution and declaration; and the timely filing thereof shall entitle the candidate to have his name printed upon the official ballot used by his party at the primary in each county in such legislative district. * * *"

Section 7117, Rev. Code 1919, as amended by chapter 113, Laws 1927, reads in part as follows:

"The name of no party candidate for * * * legislative * * * offices * * * shall be printed upon the official party ballot used at any primary held, as herein provided except the candidates of

two representative proposals within each party as herein provided, unless on or before April first, before the date of the primary, an individual candidate proposal petition shall have been filed in the office of the secretary of state * * * in substantially the following form. * * *"

Section 7118, Rev. Code 1919, as amended by chapter 113, Laws 1927, makes provision for the percentage of signers upon individual proposal petitions for party primaries.

Section 7119, Rev. Code 1919, bears the subtitle "Individual Proposal Petition—How Made and Signed," and reads as follows:

"To each of the individual proposal petitions, as provided in sections 7117 and 7118, each petitioner shall affix his own signature, with pen and ink or by indelible pencil, and shall add, after his name, his voting precinct, post office address, county and date of signing. No petitioner shall sign more than one such petition relating to the same office, in the same year, and no name shall be counted upon such petition unless the same appears to have been signed within five months prior to the date of the primary election in which the person, in whose behalf the petition is filed, is to be a candidate. It shall not be necessary that one paper shall contain all the signatures, but a single petition may be made up of one or more papers, each having the requisite heading. Separate papers in the proper form and duly signed, may, before filing, be bound together and shall be regarded as one petition, and shall be sufficient if the aggregate number of signatures is not less, nor more, than the number required by this chapter. Blank lines upon additional sheets, securely fastened to a top sheet having the prescribed heading, may be used in obtaining signatures and shall be regarded, together with the top sheet having proper heading, as one paper."

With reference to the first class of signatures objected to by plaintiff, it is entirely clear upon the decisions of this court that a signature upon a proposal petition is not entitled to be counted as a valid signature thereon unless there is added thereafter in the handwriting of the signer the data required by statute, which in this instance, under the provisions of section 7119, Rev. Code 1919, supra, are " his voting precinct, post office address, county and date of signing." Lucas v. Ringsrud, Secretary of State (1892) 3 S. D. 355, 53 N. W. 426; Harris v. King, County

Auditor (1906) 21 S. D. 47, 109 N. W. 644; O'Brien v. Pyle, Secretary of State (1927), 51 S. D. 385, 214 N. W. 623.

■ With reference to the second class of signatures objected to by plaintiff, which we may call the "duplicates," it appears not only that plaintiff's petition containing these names was filed two days in advance of the Metz petition containing the same names, but also, from the signing dates on the respective petitions, that the names purport to have been affixed to the petition of plaintiff several days before they were affixed to the Metz petition. The prohibition of the statute above quoted is that:

"No petitioner shall sign more than one such petition relating to the same office, in the same year."

These words are clear and mandatory, and we think that they mean what they say. To petition that a certain name be placed on a primary ballot as a candidate for party nomination for a given office is a privilege extended by statute to the party elector. When he has once exercised that privilege with respect to party nomination for a given office, it is exhausted and he is no longer qualified to sign a petition seeking to propose any other elector as party nominee for the same office for the same period. State ex rel. Miller v. Harmon (1912) 35 Nev. 189, 127 P. 221, Ann Cas. 1914C 891; O'Connor v. Smithers (1908) 45 Colo. 23, 99 P. 46; In re Smith (1903) 41 Misc. Rep. 501, 85 N. Y. S. 14; Re Commissioner of Elections (1909) 64 Misc. Rep. 620, 120 N. Y. S. 580; Attorney General ex rel. v. Clarke (1904) 26 R. I. 470, 59 A. 395; People ex rel. v. Smith (1912) 152 App. Div. 514, 137 N. Y. S. 387; Id., 206 N. Y. 231, 99 N. E. 568.

From the foregoing it follows as to the Metz petition that the 5 signers who failed to set forth after their names the data required by statute must be disregarded, and likewise the 20 signers who had previously affixed their names to the earlier filed petition of plaintiff as candidate for the same nomination.

■ We come now to the third class of signatures objected to by plaintiff, involving the claimed invalidity of 72 signatures upon the Cundill petition and an additional 29 signatures upon the Metz petition, presenting a point of greater apparent novelty. The wording of our statute is plain. It provides (section 7119, R. C. 1919, supra) that each petitioner "shall affix his own signature, with pen and ink or by indelible pencil." Manifestly the words "pen and

ink" and "indelible pencil" are readily understandable. They have a plain and generally understood and accepted meaning, and with reference to such words themselves, there is, we think, neither necessity nor opportunity for any elaborate process of construction or interpretation. We do not understand defendant to claim that these words are vague or indefinite, or that they do not have a plain and generally accepted meaning, or that they should or can be construed or interpreted out of or away from that meaning, but it is the contention of the defendant, as we understand it, admitting the plain meaning of the words in common usage, that this statutory requirement for signing "with pen and ink or by indelible pencil" is directory only and not mandatory. We have found but one precedent squarely on the point, being the Ohio case of State ex rel v. Lloyd (1915) 93 Ohio St. 20, 112 N. E. 141, cited in an opinion rendered by the Attorney General of this state in 1922 (Rep. of Atty. Gen. 1922, p. 169) in the following language:

"You state that many signatures were made to these petitions with lead pencil. Section 7119 of the Revised Code of 1919 provides that to an individual petition each signer shall affix his own signature with pen and ink or indelible pencil. The Supreme Court of Ohio, in the case of State ex rel. v. Lloyd [93 Ohio St. 20] 112 N. E. 141, construed a similar provision in the statutes of that state. The court therein says:

" 'Section 207 of the Charter of the city of Columbus, duly adopted in pursuance of authority conferred by the Constitution, having reference to the requirements of nominating petitions for municipal offices, specifically requires that "each signer to a petition shall sign his name in ink or indelible pencil." Such provision controls, and that requirement must be regarded as mandatory, and therefore signatures not in compliance therewith need not be and should not be considered or counted in determining the sufficiency of a nominating petition.'

"The Ohio court holds that such a provision is mandatory, and signatures affixed not in compliance therewith need not be considered in determining the sufficiency of a petition. I believe that the same construction must be placed on the provisions of our statute."

The Ohio case does not discuss the proposition, and the excerpt from the Attorney General's opinion above set out contains

all that is found in the Ohio decision on this particular point. We incline to think, however, that the Ohio decision establishes a sound rule. We fear that it too often happens that a subtle distinction between "mandatory" and "directory" is made for purposes of judicial legislation, whereby a court may, in substance, repeal a plain statutory provision which it deems unwise or inexpedient. Certainly such a practice carries "interpretation" beyond due bounds. In the present case the words of the statute are unambiguous and the commonly mandatory form of the verb, "shall," is used. This would seem to imply that the petitioner should not otherwise affix his signature. This is not the first instance in the law of this state of a statutory provision for petition by electors. To cite only three examples we may mention the petition for initiating a law (section 5067, R. C. 1919) and the petition for referring a law (section 5071, R. C. 1919), both originating in this state in chapter 93, Laws 1899, and the provision for nominating by individual petition candidates for office to be voted upon at the general election (section 7201, R. C. 1919) originating in section 5, c. 57, Laws 1891. In these statutes, existing almost since statehood, the provision is simply that the petitions there referred to "shall be signed by electors." Section 7119, Rev. Code 1919, has its origin as section 41, c. 234, Laws 1917, which was an initiated measure. When in that statute, in place of providing merely, as seems to have been the previous practice, that such petitions should be "signed by the electors," it was further specifically and affirmatively provided in addition that each petitioner should affix his own signature with pen and ink or by indelible pencil, we must assume that the statute means what it very plainly says and that there was believed to be some sufficient reason for the making of this distinctive additional provision. We do not feel at liberty to strike out those words under the guise of "interpretation," nor to accomplish that same result by saying that the words are directory only, and not mandatory; that is, judicially to amend the statute so as to read:

"It is desired but not required that signatures shall be affixed, in so far as may be convenient and agreeable, with pen and ink or by indelible pencil rather than otherwise."

 Counsel for defendant, upon the oral argument, went at some length into the matter of whether signature in the manner

required by this statute was more likely to avoid fraud than would be the case if signatures were permitted with the ordinary lead pencil and discussed learnedly the relative ease of erasure of marks made by what is commonly known as an "indelible" pencil as compared with the ordinary lead pencil. This opened an interesting field of speculation, but arguments of this sort should properly address themselves to the Legislature rather than to this court. We are not at liberty to hold that a statute does not mean what it very clearly says merely because such legislation might appeal to us as futile or unnecessary or unduly restrictive. As previously held (Harris v. King, supra):

"If this law is unwise, unjust, or inexpedient, it should be modified by the Legislature, not by this court."

It should be noted that the instant case is not one where the insufficiency of the nominating petition is sought to be availed of in a contest over office after election, but we have here a prompt and direct attack upon the petition itself before election. It is further to be observed that the statute in question does not deal with the matter of nominations of candidates for public office, but only with the matter of the proposing of candidates for party nomination. Mr. Metz or Mr. Cundill or any other properly qualified persons may have their names placed upon the ballot at the next general election as candidates for the office of state Senator from the particular legislative district in question by complying with the provisions of section 7201, Rev. Code 1919, reading as follows:

"Candidates for public office may be nominated otherwise than by primary election, in the manner following: A certificate of nomination containing the name of the candidate, his residence, his business address and the office to be filled, may be signed by electors residing within the district or political division in and for which such officer is to be elected in the following numbers: Two hundred or more when the nomination is for an office to be filled by the electors of the entire state; twenty or more when the nomination is for an office to be filled by the electors of a county, district or other division less than the entire state; and five or more when the nomination is for an office to be filled by the electors of a township, precinct or other division less than the entire county; provided, however, that the signatures need not all be appended to one paper. Each elector signing a certificate of nomination

shall add to his signature his place of residence, his business and his postoffice address."

The controversy here deals only with the primary election. It is a question not of being a candidate, but of the privilege of having a chance to be named as a particular type of candidate, to wit, a party candidate. Prior to our present primary law, party candidates were named only by caucus or convention, which presumably represented the will of a majority of the party electors. The present statute confers upon so small a minority of the party electors as 5 per cent the privilege of placing upon the party primary ballot the name of their choice as a candidate to become the party candidate. This is distinctly a matter of privilege, originating with this statute, and not a vested right.

"* * * When a statute is passed authorizing a proceeding which was not allowed by the general law before, and directing the mode in which an act shall be done, the mode pointed out must be strictly pursued. It is the condition on which alone a party can entitle himself to the benefit of the statute, that its directions shall be strictly complied with. * * * Where a statute in granting a new power prescribes how it shall be exercised, it can lawfully be exercised in no other way. * * *" Sutherland on Statutory Construction, § 454.

"* * * In the first place, a strong line of distinction may be drawn between cases where the prescriptions of the act affect the performance of a duty, and where they relate to a privilege or power (c). Where powers or rights are granted, with a direction that certain regulations or formalities shall be complied with, it seems neither unjust nor inconvenient to exact a rigorous observance of them as essential to the acquisition of the right or authority conferred; and it is therefore probable that such was the intention of the Legislature. * * *" Maxwell on the Interpretation of Statutes (5th Ed. Stroud) p. 599.

In Harris v. King (supra), citing Lucas v. Ringsrud, this court said:

"The language of the statute is clear and unambiguous; its meaning unmistakable. There is no room for doubt as to legislative intent. * * * Any one who wishes to avail himself of the benefits of the law must substantially comply with its provisions."

And later in the same case the court said:

"It may be argued that citizens should be facilitated in the exercise of their right to present independent candidates. They have been by the extremely liberal rules prescribed by the statute. The rules are so plain, simple, and easily complied with that a departure from their requirements, such as was disclosed by this proceeding, is wholly inexcusable."

We believe the principles thus established must control this case. It would seem that the situation with reference to these petitions has arisen solely, to quote a New York case (Re Swarthout [1912] 76 Misc. Rep. 24, 136 N. Y. S. 243), "by the want of diligence of those having them in charge and with full knowledge of the statutory requirements." We do not believe that the parties who were in charge of the circulation and signing of these petitions should expect this court judicially to repeal by construction a plain legislative act merely to avoid the results of their own negligence in failing to comply with the clear and express requirements of the statute.

We are of the opinion that 54 signatures must be disregarded on the Metz petition, leaving only 117 valid signatures, and 72 signatures must be disregarded on the Cundill petition, leaving only 72 valid signatures. The valid signatures upon each of these petitions being less than the necessary minimum of 137, the judgment of the court is that said petitions, and each of them, are insufficient and not entitled to filing, and that the injunction should issue as prayed for by plaintiff.

POLLEY, SHERWOOD, and BROWN, JJ., concur.

BURCH, P. J., absent, and not participating.