**Darrell G. HALVERSON, Plaintiff and Appellant,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, a Corporation, et al., Defendants and Appellees.**

No. 12665.

Supreme Court of South Dakota.

Argued Sept. 14, 1979.

Decided Dec. 28, 1979.

Max A. Gors, Pierre, for plaintiff and appellant.

Roger L. Severns, Jr., Atty. S.D. Retirement System, Pierre, for defendants and appellees, Board of Trustees, Al Asher and Linda Nill; David O. Carter, Asst. Atty. Gen., Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Howell L. Fuller of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellee, Metropolitan Life Insurance Co.

MORGAN, Justice.

Appellant Halverson appeals from an order of the circuit court, Sixth Judicial Circuit, granting summary judgment to Metropolitan Life Insurance Co. and various members of the Board of Trustees of the South Dakota Retirement System (appellees). Appellant argues that the circuit court erred in concluding that, as a matter of law, the provisions contained in a certificate of life insurance issued to appellant's wife were incorporated into the group life insurance policy and binding upon her. We affirm.

Appellant's wife became employed with the State Chemical Laboratory as a secretary on August 2, 1974. On that date, she signed an enrollment card to obtain coverage under a group life insurance program underwritten by Metropolitan Life Insurance Co. (Metropolitan) for employees of the State of South Dakota. Under that program, employees may choose coverage in a multiple of their salary (½ times salary, 1 times salary, 2 times salary, 3 times salary). Mrs. Halverson elected coverage in the amount of one times salary which was $8,000.00. A group insurance certificate was issued to Mrs. Halverson a short time later. Around August of 1975, Mrs. Halverson, who also served as the payroll clerk for the laboratory employees, increased her coverage to two times salary ($16,000.00) by making an adjustment on her payroll card which increased the premium to be withheld from her paycheck. Mrs. Halverson did not notify Metropolitan of this change or furnish the insurer with evidence of her insurability. In fact, Mrs. Halverson could not have provided such evidence since she discovered in early 1975 that she was suffering from cancer.

In October of 1975, Mrs. Halverson terminated her employment with the State because of her illness. In November of 1975, she elected to convert her group policy to an individual policy.[1] Based on the payroll data which showed that Mrs. Halverson had elected two times salary, Metropolitan issued her a $16,000.00 policy. Mrs. Halverson died of cancer on January 23, 1976. Appellant, as her named beneficiary, furnished Metropolitan with proof of death. Metropolitan refused to pay the face amount of the policy, claiming that Mrs. Halverson never gained the additional coverage because she had not complied with the requirement found in the certificate that proof of insurability be provided to the insurer before coverage will be increased. The insurer tendered the $8,000.00 coverage and a refund of all excess premiums paid.

The proper amount of insurance coverage is dependent entirely upon whether Mrs. Halverson was bound by the provisions contained in the certificate of insurance. The master policy, a copy of which is not given to state employees unless requested, contains the following language:

> In consideration of the payment by the Employer of the initial premium and of the payment hereafter by the Employer, during the continuance of this Policy, of all premiums when they fall due as hereinafter provided, Metropolitan Life Insurance Company promises to pay the insurance and other benefits described in the Exhibits listed in the Schedule of Exhibits hereof as such Exhibits have applicability to the respective Employees insured hereunder, in accordance with and subject to the provisions of this Policy.
>
> The provisions hereinafter contained, including those in the Exhibits, are part of the Policy as fully as if recited over the signature hereto affixed.

Only one exhibit is listed in the Schedule of Exhibits and that exhibit is the certificate of insurance which by statute[2] and by the terms of the policy itself must be delivered to each employee insured under the program. According to the master policy, the certificate "shall state the insurance to which such employee is entitled under this Policy and to whom benefits are payable, and . . . shall summarize the provisions of this Policy principally affecting the employee." The master policy also states that "this policy and the application of the Employer, a copy of which is attached hereto, constitutes the entire contract between the parties."

The certificate of insurance which Mrs. Halverson received states:

> This certificate contains only a summary of the provisions of the Group Policy. It is not a contract of insurance. The insurance is subject in every respect to the provisions of the Group Policy which alone constitutes the contract under which the insurance is provided.

Also contained *in the certificate* is a provision that an employee who requests insurance after thirty-one days of the date when he becomes eligible for insurance (the first payday after employment) "must furnish at his own expense evidence of insurability satisfactory to the insurance company before such insurance may become effective." The master policy contains no such provision. Appellant argues that the language of the certificate indicates Metropolitan's clear intent to limit the contract of insurance to the terms found in the master policy. Appellees respond, however, that the certificate was validly incorporated by reference into the master policy so that Mrs. Halverson was bound by the certificate's provisions, including the requirement of proof of insurability.

Appellant relies on *Boseman v. Connecticut General Life Insurance Co.*, 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036 (1937), to support his position that a certificate of insurance forms no part of the insurance contract. In *Boseman*, the master policy stated that Pennsylvania law was to govern

1. SDCL 58–16–39 requires that a group life insurance policy make provision for conversion to an individual policy when an insured terminates employment.

2. SDCL 58–16–38.

the contract rights of the parties. The certificate was delivered to the insured in Texas and its terms did not vary from those in the master policy. The insured did not comply with Pennsylvania law which required written notice of disability and claimed that delivery of the certificate of insurance to him in Texas made the law of that state applicable. The court rejected the insured's argument and reasoned that

> the certificate is not a part of the contract of, or necessary to, the insurance. It is not included among the documents declared "to constitute the entire contract of insurance." Petitioner was insured on the taking effect of the policy long before the issue of the certificate. It did not affect any of the terms of the policy. It was issued to the end that the insured employee should have the insurer's statement of specified facts in respect of protection to which he had become entitled under the policy. It served merely as evidence of the insurance of the employee. [The insured's] rights and [the insurer's] liability would have been the same if the policy had not provided for issue of the certificate.

301 U.S. at 203, 57 S.Ct. at 690, 81 L.Ed. at 1040.

It is generally recognized, however, that the *Boseman* rule is applicable only in cases where the certificate contains no substantive provisions not already embodied in the master policy. *See, e. g., Thieme v. Union Labor Life Insurance Company*, 12 Ill. App.2d 110, 138 N.E.2d 857 (1956); *Commercial Ins. Co. of Newark v. Burnquist*, 105 F.Supp. 920 (D.C.N.D. Iowa 1952); *Walls v. Connecticut General Life Ins. Co.*, 82 F.Supp. 421 (D.C.D.C.1949); *Collier v. Metropolitan Life Ins. Co.*, 82 F.Supp. 529 (D.C.D.C.1949). Where the certificate contains provisions which are not contained in the master policy itself, the certificate is consistently construed to be an integral part of the policy. Id.

In the leading case of *John Hancock Mut. Life Ins. Co. v. Dorman*, 108 F.2d 220 (9th Cir. 1939), the court observed that the certificate contained substantive terms which would have rendered the policy incomplete to determine the relative rights and liabilities of the insured and the insurer had the certificate not been construed as a part of the policy. On this basis, the court distinguished *Boseman* where the certificate contained no provisions which were not already in the master policy and which served no purpose other than as evidence of the policy.

The certificate involved here contains several substantive terms and conditions which cannot be found in the master policy and without which the policy of insurance is incomplete. The certificate contains the only provisions relating to eligibility, effective dates of coverage (which contains the requirement for proof of insurability), extended death benefits, conversion rights, cessation of insurance, and the schedules of insurance. Consequently, application of the *Dorman* rule is appropriate here because neither the insured's rights nor the insurer's liabilities would be the same if the certificate had not been issued. We hold, therefore, that the certificate issued to Mrs. Halverson was part of the group life insurance policy and that the provision requiring proof of insurability was binding upon her.

Application of South Dakota statutes also calls for the conclusion that appellant's wife was bound by the provisions in the certificate. SDCL 58–16–38 requires group life insurers to issue certificates of insurance to policyholders who in turn must deliver the certificates to the individual insured employees.[3] SDCL 58–11–39 states:

> Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or individual certificate setting forth a statement as to the insurance protection to which he is entitled, to whom the insurance benefits are payable, and the rights and conditions set forth in §§ 58–16–39 and 58–16–41, inclusive.

---

3. SDCL 58–16–38 states:

> Except as provided in § 58–16–31, a policy of group life insurance shall contain a provision that the insurer will issue to the policyholder for delivery to each person insured an

application lawfully made a part of the policy.

Construing identical statutes, the Hawaii Supreme Court in *Lecker v. General American Life Insurance Co.*, 55 Haw. 624, 525 P.2d 1114 (1974), concluded that the intent of the statutes is to entitle an insured employee to rely on the contents of a certificate issued to him in compliance with the statute, regardless of a provision in the master policy which purportedly limits the contract to the master policy. The court did not go so far as to hold that the certificate was necessarily a part of the insurance contract but stated instead that:

> [I]n the construction of such contracts to determine the rights, benefits and liabilities of the parties, courts will give proper consideration and effect to the certificates prepared by the insurer and which are issued and delivered to the insureds, especially where the group policy itself and the applicable statutory provisions require that such certificates contain a summary of the essential features of the insurance coverage.

55 Haw. at 630, 525 P.2d at 1117–8.

The positions taken by the parties in *Lecker* were exactly the converse of the positions taken in the instant case. In that case, one of the exclusions from coverage listed in the master policy was not listed in the summary of exclusions listed in the certificate. The plaintiff-beneficiary argued that the language in the certificate, which afforded greater coverage, was controlling. The insurer pointed to a provision in the master policy such as the one in the master policy here, which limited the insurance contract to the policy and the applications of the employer and the individual employees. The court held that the insurer was estopped from denying benefits to the plaintiff because the statutes requiring issuance of certificates would be rendered nugatory if insured employees were not allowed to rely on statements made in the certificate.[4]

We conclude that the same intent should be ascribed to the South Dakota statutes as was ascribed to identical statutes by the *Lecker* court. However, the *quid pro quo* of a rule which allows insureds to rely on statements in the certificate is a rule that insureds have the concomitant duty to satisfy the terms and conditions imposed upon them by the terms of the certificate. Otherwise, the insured or his beneficiary could assert the provisions of the certificate in those circumstances when they were of benefit to him but could disregard them when they impose an obligation upon him as a prerequisite to coverage. Consequently, in the instant case, appellant's wife was bound by the requirement explicitly set forth in the certificate that proof of insurability must be offered to and accepted by the insurer before coverage can be increased.

For the foregoing reasons, we hold that the trial court did not err in granting summary judgment to the appellees.

Affirmed.

All the Justices concur.

---

4. *See also, Riske v. National Casualty Co.*, 268 Wis. 199, 67 N.W.2d 385 (1954), heavily relied upon by the *Lecker* court, where the same conclusion was reached.