Marva CHENEY, Plaintiff
and Appellant,

v.

METROPOLITAN LIFE INSURANCE
COMPANY, a New York domiciled in-
surance company duly qualified to do
business in South Dakota; the South
Dakota Public Employees Insurance
System, 216 East Capitol, Pierre,
Hughes County, South Dakota; Al Ash-
er as Administrator of the South Dako-
ta Public Employees Insurance System;
and Linda Nill, as Administrator of the
Life Insurance section of the Public
Employees Insurance System, Defend-
ants and Appellees.

No. 14482.

Supreme Court of South Dakota.

Argued Sept. 11, 1984.

Decided June 19, 1985.

Rehearing Denied July 19, 1985.

Ronald G. Schmidt of Schmidt, Schroyer, Colwill & Zinter, P.C., Pierre, for plaintiff and appellant.

William P. Fuller of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellee Metropolitan Life Ins. Co.

Roger L. Severns, Jr., Sp. Asst. Atty. Gen., Pierre, for defendants and appellees South Dakota Public Employees Ins. System, Al Asher and Linda Nill; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

BERNDT, Circuit Judge.

This is an appeal from a summary judgment dismissing an action for declaratory judgment, mandamus and other relief, by appellant, Marva Cheney, to collect life insurance benefits. We affirm.

The facts of this case are before us by stipulation and are not in dispute.

Appellant was the widow of Julian Cheney. Julian Cheney took office as the South Dakota Commissioner of School and Public Lands on January 3, 1983, and thus became a state employee, eligible to join the state employees' group life insurance plan. Cheney died January 16, 1983.

Marva Cheney died subsequent to the initiation of this action. By stipulation and order, William B. Cheney and Luke A. Cheney, as co-trustees of the Marva Cheney Trust, were substituted as parties plaintiff.

Appellee, Metropolitan Life Insurance Company, hereinafter called Company, is the underwriter for the State Insurance Group Life Insurance Plan, which is administered through its agent, South Dakota Public Employees Insurance System, hereinafter called System, also an appellee.

On January 3, 1983, Cheney was furnished with an "offering brochure" and the necessary forms to apply for life insurance coverage under the State's group plan. The offering brochure, or booklet, outlines the insurance plan which was available and specifies when coverage takes effect under the heading, "When Your Insurance Becomes Effective."

Cheney signed and submitted, on January 3, 1983, the necessary application requesting to be insured for three times his basic annual earnings, which were rounded out at $102,000.00. The application authorized the State of South Dakota to make the necessary payroll deductions to cover the premium. Appellant wife was designated as the beneficiary.

There is an insurance contract, or master policy, between Company and System which was issued January 1, 1973. Page 1 of this policy states: "The provisions hereinafter contained, including those in the Exhibits, are part of this Policy as fully as if recited over the signatures hereto affixed." Under "Eligibility and Effective Dates of Insurance" this policy, Page 2, Section 2, reads as follows:

A. Eligibility.—Each Employee shall be eligible for insurance hereunder on his own account ... as set forth in the Exhibit applicable to him.

B. Effective Dates of Insurance.—The insurance on account of any Employee ... shall become effective as set forth in such Exhibit.

The Schedule of Exhibits lists only one exhibit, namely, Certificate Form G.3300A, F, 1KE, 31, 2XYA, as applicable to all employees. In regard to this certificate, Section 7, Page 6 of the policy reads:

Certificates.—The Insurance Company will issue to the Employer, for delivery to each Employee insured hereunder, an individual certificate which shall state the insurance to which such Employee is entitled under this Policy and to whom benefits are payable, and which shall summarize the provisions of this Policy principally affecting the Employee. The word "certificate" as used in this Policy includes certificate riders and certificate supplements, if any.

This certificate, entitled "Group Insurance Certificate," sets out an employee's eligibility for insurance and the effective date thereof as follows:

Each Employee employed subsequent to January 1, 1973 shall be eligible for insurance under the Group Policy on his own account on the first warrant date for the payroll deduction for the contribution required by the Employer toward the cost of his insurance under the Group Policy next following the date of his employment.

. . . .

The insurance on account of any Employee who makes such request on or before the date of his eligibility for such insurance shall become effective on the date of his eligibility for such insurance provided he is actively at work on such date. The insurance on account of any Employee who makes such request after the date of his eligibility for such insurance and on or before the thirty-first day following the date of his eligibility for such insurance (or on or before the thirty-first day following the date of his return to active work if he is not actively at work on the date of his eligibility for such insurance) shall become effective on the next following warrant date following the date of such request, provided he is then actively at work. . . .

Company furnished to System a manual entitled "Group Insurance Administration Manual" which sets forth general information and procedures to be followed in administering the group insurance program. Chapter II of the manual covers eligibility and effective dates of the employee life insurance as follows:

Eligibility Date.—The warrant date of the first payroll deduction for the cost of the employee's insurance following the date of his employment.

Effective Date.—1. Same as "Eligibility Date" if the card was signed on or prior to the eligibility date.

## LEGAL ISSUE

Was Julian Cheney covered under the State Employees' Group Life Insurance Plan on the date of his death, January 16, 1983?

Appellant contends that Section 7, Page 6, of the policy and SDCL 58–16–38 * delineate what shall be in the certificate and that these provisions do not include eligibility or effective dates. Appellant argues that the attempt to impose or construe language in the certificate as a condition to eligibility is improper and a violation of the policy language as well as of SDCL 58–16–38.

■ Appellant contends that the three items referenced in SDCL 58–16–38, and only these three items, are authorized by statute to be contained in the certificate. Appellant, in effect, is saying that "effective date" has nothing to do with "the insurance protection to which he is entitled" as set forth in SDCL 58–16–38. Such argument is untenable. There can be no insurance protection unless there also is an effective date; therefore, provision for an effective date in the certificate is not beyond the scope of SDCL 58–16–38.

The certificate states that it is a summary of the policy provisions concerning eligibility and effective dates and other provisions of the group policy and is not a contract of insurance, and that the group policy alone constitutes the contract under which the insurance is provided. Appellant agrees that the certificate is a part of the policy to the extent provided by the policy itself, but argues that a summary can create no conditions of eligibility. As previously noted, the policy contains no effective date provision, but refers to the certificate for such date.

■ Where the certificate contains provisions which are not contained in the master policy itself, the certificate is consistently construed to be an integral part of the policy. The certificate herein is the identical certificate which was held to be a part of the group life insurance policy by this court in *Halverson v. Metropolitan Life Ins. Co.*, 286 N.W.2d 531 (S.D.1979). The court, in *Halverson*, stated:

The certificate involved here contains several substantive terms and conditions which cannot be found in the master policy and without which the policy of insurance is incomplete. The certificate contains the only provisions relating to eligibility, effective dates of coverage (which contains the requirement for proof of insurability), extended death benefits, conversion rights, cessation of insurance, and the schedules of insurance.

*Id.* at 533.

"Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement or application lawfully made a part of the policy." SDCL 58–11–39.

"Words used are to be understood in their ordinary sense...." SDCL 2–14–1. *Jacobs v. Pyle*, 52 S.D. 537, 219 N.W. 247 (1928).

We reject appellant's argument that Section 7, Page 6 of the policy and SDCL 58–16–38 prevent the effective date provision of the certificate from lawfully being made a part of the policy.

■ Since the policy contains no provision for an effective date, such provision in the certificate applies.

We next consider appellant's argument that insurance coverage was in force on Cheney at the time of his death under governing relevant statutes and under the express terms of the policy itself.

---

* SDCL 58–16–38 provides:

Except as provided in § 58–16–31, a policy of group life insurance shall contain a provision that the insurer will issue to the policyholder for delivery to each person insured an individual certificate setting forth a statement as to the insurance protection to which he is entitled, to whom the insurance benefits are payable, and the rights and conditions set forth in §§ 58–16–39 to 58–16–41, inclusive.

SDCL ch. 58–16 authorizes the issuance of group life insurance. SDCL ch. 3–12A authorizes the State of South Dakota, acting through the Board of Trustees of the South Dakota Retirement System, to participate in a group health and life insurance plan for employees. There is nothing in either chapter which automatically places any insurance in force on Cheney, or any other employee, or which specifies an effective date.

SDCL 3–12A–25 and 3–12A–2(3) empower the South Dakota Retirement System Board of Trustees to make rules and regulations for the effective administration of SDCL ch. 3–12A, including the effective dates of coverage where not specified by statute. Pursuant to such authority, the Board, on March 2, 1980, adopted an administrative rule, ARSD 62:02:03:01, which states, "Coverage begins on the first warrant date a deduction is made." Cheney was eligible for insurance under the group policy on the first warrant date for the payroll deduction for the contribution required by the State toward the cost of his insurance under the group policy next following the date of his employment. As provided by the policy certificate and the administrative rule, the effective date was the same as the eligibility date.

■ Appellant also contends that there is ambiguity as to the meaning of the term "warrant date." As a contract of adhesion, the policy with its certificate is subject to certain rules of construction. In case of doubt as to meaning, it will be interpreted against the insurer who furnished or prepared the policy. 43 Am.Jur.2d *Insurance* § 283 (1982).

■ Its provisions, however, "are to be read and understood according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation." 43 Am. Jur.2d *Insurance* § 282 (1982). *See also* 44 Am.Jur.2d *Insurance* § 1871 (1982); *Vern Eide Buick, Inc. v. United States Fidelity & Guaranty Co.,* 273 N.W.2d 116 (S.D.1978); *Cramer v. American Alliance Ins. Co.,* 72 S.D. 509, 37 N.W.2d 192 (1949).

The first payroll period after Cheney's employment on January 3, 1983, was the period ending January 14, 1983. Cheney died January 16, 1983. The salary warrants for the pay period ending January 14, 1983, for the Department of School and Public Lands employees, including Cheney, were printed on January 20, 1983. The date on the warrant which is cashed by employees is January 25, 1983, which is the fourth Tuesday of the month and the established date when all state employees received their warrants for their pay for the payroll period ending January 14, 1983.

The warrant is printed with a detachable "stub" which contains payroll data and information for the employee, such as base pay, regular and overtime hours worked, employer contributions and payroll deductions. The stub carries two dates: one is the date of issue, which is the same as the warrant date of issue; the other shows the payroll period ending date. The stub shows that, pursuant to authorization, the amount of $39.15 was deducted from Cheney's pay for life insurance.

Appellant contends that "the first warrant date for the payroll deduction," or as worded in the administrative rule, "the first warrant date a deduction is made," is the payroll period ending date on the stub, i.e., January 14, 1983.

SDCL 4–9–8 provides for the issuance, contents and record of warrants:

> For the sums which shall be found due from the state the state auditor shall issue warrants payable at the state treasury which shall be numbered consecutively and each shall specify the date of the issue, the fund on which it is drawn, and the name of the person to whom payable; and the number, date of issue, and the name of person to whom payable, of each warrant, shall be entered upon a record and shall be carefully preserved by the auditor in his office.

SDCL 4–9–9 provides that "[t]he state auditor shall enter in progressive order, in a book or books to be provided for that

purpose, the number of each warrant by him issued, the amount thereof, the date of its issue, and the name of the person to whom issued...."

SDCL 4–9–11 provides that after payment of a warrant, the state treasurer shall cause the same to be either reproduced and recorded or entered in a book by number, date, amount and name of payee.

SDCL 4–9–13 requires the state treasurer to keep a warrant register showing the number, date and amount of each warrant presented, as well as other data.

██ The only statutorily required date is the date affixed to the warrant, and that is the warrant date. The warrant date is not the pay period ending date shown on the stub.

A "warrant" is an order by which the drawer authorizes one person to pay a particular sum of money. Black's Law Dictionary 1756 (4th Ed. 1951).

██ A state warrant is an order by the auditor upon the treasurer for the payment of the amount due as ascertained by the auditor. *People v. Gibbs*, 413 Ill. 154, 108 N.E.2d 446 (1952).

██ The warrant in this case was the first paycheck issued to Cheney following his employment. January 25, 1983, was the first warrant date, the only warrant date, and, thus, the date that any insurance coverage would have taken effect had Cheney lived.

██ Any other interpretation of the effective date of coverage would result in a "subtle and forced construction." However attractive it might be to liberally construe a statute to avoid a result that may appear harsh, we will not so act when such action would do violence to the plain language of the statute. *Burns v. Kurtenbach*, 327 N.W.2d 636 (S.D.1982); *Johnson v. Herseth*, 246 N.W.2d 102 (S.D.1976). The same reasoning applies to construction of the insurance policy here under consideration, where the plain language of the policy and its certificate leaves no ambiguity as to the intended effective date of coverage.

The payroll period from which the premium is deducted, the act of deducting the premium, premium due date, and grace period are all matters which have been argued and considered. They do not change the effective date of coverage, which was January 25, 1983.

██ Count II of appellant's complaint asserts that appellees are estopped from asserting, or must be deemed to have waived, any contention that Cheney's coverage was not effective on the date of his death, because they had a duty to furnish him a certificate and failed to do so. Appellant argues that Cheney should not be held to the terms of a certificate which Cheney was never given. SDCL 58–16–38 requires the insurer to issue an individual certificate to each person insured. This argument must fail, since Cheney died before he became an insured. It is also noted that the offering brochure which was furnished to Cheney clearly states: "By enrolling during your eligibility period, you will become insured for employee insurance on the warrant date that reflects your first deduction if you are then actively at work." The warrant date is the date on his first warrant, or paycheck, January 25, 1983.

The summary judgment of the trial court is affirmed.

WOLLMAN and MORGAN, JJ., and WUEST, Circuit Judge, Acting as Supreme Court Justice, concur.

HENDERSON, J., dissents.

BERNDT, Circuit Judge, sitting for FOSHEIM, C.J., disqualified.

HENDERSON, Justice (dissenting).

I respectfully dissent.

Under the majority opinion, the heirs of Julian and Marva Cheney will receive $39.15—the premium deducted from Julian Cheney's earnings for his work period end-

ing January 14, 1983,[1] which was transferred by the Employer/State to the account of the South Dakota Public Employees Insurance System.[2] Under my viewpoint, radically different from the majority, the Cheney heirs would receive $102,000 from Metropolitan Life Insurance Company.

## RATIONALE I.

### WARRANT DATE/PAYROLL DATE

In the 1966 Legislative Assembly, the insurance industry prevailed upon the Legislature, and were successful, to inaugurate group life insurance policies in South Dakota. The general scheme developed was to permit group life insurance in South Dakota, but precluded any type or kind of a group policy to be issued unless it conformed with the requirements set forth by state statute. SDCL 58–16–1. SDCL 58–16–3 provided, inter alia: "A policy issued to insure the employees of a public body may provide that the term 'employees' shall include elected or appointed officials."

On January 3, 1983, Julian Cheney, deceased, became the South Dakota Commissioner of School and Public Lands. On this date, Julian Cheney enrolled in, joined, and subscribed to the State Employees' Group Life Insurance Plan by completing an application which authorized the deduction of premiums from his paychecks.[3] Julian Cheney continued in the people's employ and on January 14, 1983, his first pay period ended and he became entitled to his salary. This is not disputed. Julian Cheney was entitled to his salary up to this point and Metropolitan Life Insurance Company had earned an insurance premium.[4] However, because of the State's payroll system, Julian Cheney would not actually receive his paycheck or warrant for nearly two weeks.[5] In the administrative hiatus between payroll earned and payroll paid, however, Julian Cheney died (January 16, 1983) and because he was not there to receive his first paycheck, the Metropolitan Life Insurance Company and the South Dakota Public Employees Insurance System seek to deny insurance coverage even though a $39.15 deduction for life insurance was withheld from this paycheck. A right to prevail is here obfuscated and lost by an administrative hiatus, namely, a gap created by the thousands of checks which must be printed for state employees. Volume and the computer world are vaulted over justice and humanity. My sense of fairness and that which was sought to be accomplished by state statute—to give *all* state employees and constitutional officers life insurance—regardless of their health— is offended. Jus est ars boni et aequi. Law is the science of what is good and just.

Because I would interpret "warrant date," if indeed such a date is controlling, germane and valid to the resolve of this case, to mean the payroll ending date, I would reverse the summary judgment of

1. Stipulation of Facts XXXV provides:

   The amount of Thirty-Nine Dollars Fifteen Cents ($39.15) so deducted by the System from the decedent's pay for the work period ending January 14, 1983 is currently being held by the System for payment either to Metropolitan or the Plaintiff as may be ordered by the Court.

2. Stipulation of Facts XXXII provides:

   The amount of Thirty-Nine Dollars Fifteen Cents ($39.15) so deducted from Mr. Cheney's pay for the work period ending January 14, 1983 was transferred by the employer to the premium holding account of the System.

3. His eligibility, as an elected official, is not questioned in these proceedings to be insured under the State Master Policy; furthermore, it could not be for the only express statutory condition of eligibility for employee group life insurance is employment. SDCL 58–16–3.

4. Under SDCL 58–16–34, Metropolitan could reserve the right of individual insurability if conditions were set forth in the Master Policy that a person eligible for insurance must furnish evidence to the insurer as a condition to part or all of the insured's coverage. However, Metropolitan waived any requirement of any evidence of individual insurability for employees who joined the plan, as did Julian Cheney, within the first three days after employment. Thus, Cheney was under the Master Policy.

5. The State has a two-week free float on the use of all state employees' money. If the State had paid Cheney at the end of two weeks, Metropolitan would not have had an escape hatch.

the trial court.[6] *See* RATIONALE IV, *infra*, for an explanation on the invalidity of "warrant date." Any ambiguity or uncertainty in an insurance contract is to be construed most strongly against the insurer and in favor of the insured. *See Vern Eide Buick v. United States Fidelity & Guar. Co.*, 273 N.W.2d 116 (S.D.1978); *Dairyland Ins. Co. v. Kluckman*, 86 S.D. 694, 201 N.W.2d 209 (1972); *Presentation Sisters, Inc. v. Mut. Benefit Life Ins. Co.*, 85 S.D. 678, 189 N.W.2d 452 (1971); *Wilson v. Allstate Ins. Co.*, 85 S.D. 553, 186 N.W.2d 879 (1971). In the case at bar, Julian Cheney did not cause or create any ambiguity or uncertainty as to the effective date of the insurance coverage. Cheney has to be accepted—and he was accepted as an insured—only his dying triggered a renunciation of contractual obligations imposed by state statute and the Master Policy. Therefore, any resolution of the insurance contract language should be in favor of appellant and against appellees. Such is not unnatural and can be done without resorting to a subtle and forced construction.

## RATIONALE II.

### UNCONSCIONABLE/CONTRACT OF ADHESION

This Court now takes the position that this insurance policy and the certificate is a contract of adhesion. I agree with its rationale. However, I disagree with the application of the rule wherein the majority opinion states that "[i]n case of doubt as to meaning, it will be interpreted against the insurer who furnished or prepared the policy"; for, indeed, in this case, the majority interprets this contract and the certificate against the insured rather than the insurer. I fully appreciate that the majority takes the position that it is adopting this rule in favor of the insurer because the majority believes there is no doubt as to the meaning in these insurance instruments. I must respectfully disagree that there is no doubt

as to their meaning. Writing for the majority of this Court in *Rozeboom v. Northwestern Bell Telephone Co.*, 358 N.W.2d 241, 244–45 (S.D.1984), I expressed:

North Dakota, our sister state, has not been timorous in recognizing contracts of adhesion. In applying the concept to grain purchase contracts, that state's highest court in *Farmers Union Grain Terminal Ass'n v. Nelson*, 223 N.W.2d 494, 497 (N.D.1974), stated:

(1) A contract is construed most strongly against the party who prepared it * * *

(2) An agreement which is essentially a "contract of adhesion" should be examined with special scrutiny by the courts to assure that it is not applied in an unfair or unconscionable manner against the party who did not participate in its drafting.

Bell prepared the contract in question. This State should examine this contract with an impartial but critical eye in determining whether it is unconscionable against Rozy, who did not participate in its drafting. In *Bekken v. Equitable Life Assur. Soc.*, 70 N.D. 122, 143, 293 N.W. 200, 212 (1940), the North Dakota Supreme Court applied the term "contract of adhesion" to insurance contracts.

Neither Julian Cheney nor the thousands of state employees, past or present, prepared the Master Policy or the Certificate. Rather, both were prepared by Metropolitan Life Insurance Company. Special rules of construction are applicable to insurance policies for they are contracts of adhesion. 43 Am.Jur.2d *Insurance* § 282 (1982). Here, we have an insurance policy called a group insurance policy. It was the insurance company which drew the group insurance policy and the certificate in such fashion that it has triggered this litigation. In case of doubt as to meaning, the group insurance policy should be interpreted against Metropolitan who prepared the policy and the certificate. This Court should not adopt a construction or interpretation

---

**6.** The majority opinion has, substantively, hinged its decision on those two little words. As explained below, this is extra-statutory, un-

warranted language inserted into the certificate and should be entirely disregarded and held for naught.

which will defeat recovery if the policy is susceptible to a meaning which will permit recovery. Julian Cheney never saw the Master Policy; neither did his wife. Julian Cheney never saw the Certificate; neither did his wife. A state law, SDCL 58–16–38, absolutely mandated that Metropolitan Life Insurance Company furnish unto Cheney an individual Certificate.[7] Stipulation of Facts XL provides: "The System although the decedent, Mr. Cheney completed his enrollment and joined the group plan on January 3, 1983, when eligible, failed to issue a Group Insurance Certificate to Mr. Cheney." It is unconscionable for Metropolitan to have bargained to insure all employees, that Cheney paid his premium, that Metropolitan had constructive possession of the premium, that Metropolitan violated a mandatory state law, and that Metropolitan end up prevailing in this case. It is unconscionable to hold Julian Cheney and his heirs to a document which was never issued or delivered to him—a document he never saw. Cheney had no bargaining power; he had to adhere to the Master Policy and the language in the Certificate. Language, if you will, which contained additional conditions totally outside of the Master Policy. Yes, the bargaining was long over and the System and Metropolitan had carved up his—and all state employees'—rights. Metropolitan cannot escape its responsibilities, imposed by state law, by contracting with the System. To enforce an invalid provision in the Certificate, which provision exceeds the Master Policy language and deprives Cheney of insurance, is unconscionable. *Halverson,* 286 N.W.2d 531, is distinguishable in its facts. In *Halverson,* Mrs. Halverson received a certificate and then elected to convert a group policy to an individual policy. She was a payroll clerk responsible for insurance matters and received her own certificate. Here, there was no certificate issued. In each case cited by this Court in *Halverson,* the insured had received the certificate. We do not have such a factual scenario here. Cheney's hands, and those of his heirs, are clean. Reason recoils against holding Cheney to a Certificate which never came into existence. Furthermore, *Halverson* perpetrated a deception. Again, there is no such suggestion here.

### RATIONALE III.

### CERTIFICATE

By express language of the Master Policy and by virtue of the language in SDCL 58–16–38, Metropolitan was required to furnish a certificate to each insured. Julian Cheney was never furnished a certificate. His widow also demanded a certificate and was refused one. In essence, an insured, who pays money via a deduction in his paycheck, is entitled to see something, hold onto something, and have something of value for his or her money. Having parted with something of value, a party is entitled to something in return. The statute aforesaid requires a certificate to encompass information concerning (1) a statement as to the insurance protection to which he is entitled, (2) beneficiaries, and (3) the rights and conditions set forth in SDCL 58–16–39 to SDCL 58–16–41, inclusive.

Metropolitan, beyond the language of the statute, seeks to impose additional conditions by way of (a) eligibility, and (b) the effective date of the insurance as to the individual employee. The majority permits this imposition. Furthermore, the majority opinion permits the "first warrant date" to be the crucial and determining factor for the basis of its ultimate decision. By placing in the certificate of insurance a statement that the "eligibility for such insurance shall become effective on the date of his eligibility for such insurance provided he is actively at work on such date" and then wrapping it with another condition

---

7. SDCL 58–16–38 provides:

Except as provided in § 58–16–31, a policy of group life insurance shall contain a provision that the insurer will issue to the policyholder for delivery to each person insured an individual certificate setting forth a statement as to the insurance protection to which he is entitled, to whom the insurance benefits are payable, and the rights and conditions set forth in §§ 58–16–39 to 58–16–41, inclusive.

that eligibility for insurance is "on the first warrant date for the payroll deduction" is imposing a condition not demanded nor authorized by state law.

The validity of imposing such conditions in the certificate cannot be moored to SDCL 3–12A–2(3) as proclaimed by the majority, for this statute, as amended, was not even enacted until after Julian Cheney's death.[8] The certificate here in question was thus imposing conditions not authorized by law at that time and Julian Cheney's heirs cannot be obligated by them.

Moreover, Section 7 of the Master Policy expresses that the Certificate "shall summarize the provisions of this Policy principally affecting the Employee." SDCL 58–16–38, as one can read, does not authorize any "summary." A "certificate" can therefore not create something beyond the Master Policy. Crucially, Section 10 of the Master Policy provides: "This Policy and the application of the Employer, a copy of which is attached hereto, *constitute the entire contract between the parties....*" (Emphasis supplied mine.) Additionally, the Certificate itself provides:

> This certificate contains only a summary of the provisions of the Group Policy. *It is not a contract of insurance.* The insurance is subject in every respect to the provisions of the *Group Policy which alone constitutes the contract under which the insurance is provided.* (Emphasis supplied mine.)

In sum, the insurance company has weaved in language which is totally unauthorized by law, and upon which it now relies, to escape liability under the group coverage policy. The System, which is supposed to be looking out for the employees, permitted language to creep into the certificate which was simply not authorized by the law of this state or the Master Policy. Thus, Cheney and his heirs are not bound by "the first warrant date" phraseology. Our state legislature's duty is to mirror the will of the people. This is accomplished by legislative enactments which experience debate and formality. The insurance company and the System, substantively indenturing between themselves, should not be permitted to vitiate the will of the elected representatives of the people by private parchment—involving public employees and elected officials—employing words which veto legislative pronouncement.

### RATIONALE IV.

#### ESTOPPEL

Insurance companies can be estopped from relying on policy provisions relating to the effective date of the policy. 45 C.J.S. *Insurance* § 674(b) (1946). This rationale is not a pioneer effort in an uncharted wilderness. Thus, assuming arguendo that the policy here in question was not in effect at Julian Cheney's death per the warrant date phraseology argument, I would nevertheless hold that the System and Metropolitan were estopped from denying the effective date of coverage because (a) Cheney was a constitutional officer; (b) as such, he was eligible for coverage under the State Employees' Group Insurance policy; (c) he made application and was enrolled in the State Employees' Group Insurance Plan; (d) the insurance premium was deducted from his check; and (e) Cheney's money was held in trust by the System for Metropolitan and thus was in the constructive possession of the latter.

The complaint filed herein alleged estoppel and for the foregoing reasons and under the facts of this case, I would hold the System and Metropolitan estopped from denying coverage. The System and Metropolitan cannot treat the group insurance contract as valid for the purpose of deducting and collecting premiums, and invalid for the purpose of indemnity. *See* 15 Appleman, *Insurance Law and Practice* § 8496, at 273 (1985); *Spurlin v. Ranier,* 457 S.W.2d 491, 492 (Ky.1970); *Home Ins.*

---

8. The majority relies upon an amendment to the statute which became effective on July 1, 1983; however, Cheney died on January 16, 1983.

*Co. of New York v. Caudill,* 366 S.W.2d 167, 170 (Ky.1963).

I do not relate my latter statement solely to the deduction and holding in trust of Cheney's premium, but, rather, the thousands of premiums that are deducted each two-week period and the hundreds of thousands of dollars of premiums cumulatively collected under the Master Policy of the group life plan. When an insurance company insures against the death of all state employees under a group insurance policy, and takes the fruit therefrom arising, it should not be heard to complain that one employee under that plan has died nor that his family makes claim thereunder. It is inherent in the risk undertaken. For, like all mortals, the death of state employees and constitutional officers is inevitable. Cheney is covered under the group policy and he is entitled to its protective umbrella under the statutes of our state.