**William L. FLEMING, Plaintiff–Appellee,**

v.

**MONUMENTAL LIFE INSURANCE COMPANY; Monumental General Insurance Group, Defendants–Appellants.**

**No. 97–35118.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 1998.

Decided Sept. 1, 1998.

Kevin A. Bay and Roger J. Kindley, Ryan, Swanson & Cleveland, Seattle, WA, for defendants-appellants.

Jonathan P. Meier and Stephen J. Sirianni, Sirianni & Youtz, Seattle, WA, for plaintiff-appellee.

Before: LAY,* PREGERSON and GRABER, Circuit Judges.

Opinion by Judge LAY; Dissent by Judge GRABER.

LAY, Circuit Judge:

In this diversity case, William L. Fleming sued Monumental Life Insurance Company and Monumental General Insurance Group ("Monumental") to recover life insurance benefits Fleming alleged were due under a policy Monumental issued to Paul Arnold. Following a bench trial, the district court entered judgment in favor of Fleming. Monumental appeals. We affirm.

## BACKGROUND

Fleming is an attorney who has practiced in the area of trusts and estates for several years. In 1990, Fleming and Arnold, his domestic partner, purchased a home in Seattle. When Fleming and Arnold purchased their home, they obtained a mortgage through First Interstate Mortgage Company ("FIMC"). Monumental issued a Group Policy ("Group Policy") to the Trustees of the National Homeowners' Group Insurance Trust in care of FIMC. The Group Policy provided mortgage life insurance and was available to mortgagors of FIMC.

In 1993, Fleming and Arnold purchased mortgage life insurance from Monumental through FIMC. At this time, Arnold had been diagnosed with AIDS. In June 1993, Monumental issued Certificate Number 000041556 ("Certificate") to Fleming and Arnold. Monumental did not require a medical examination or other evidence of insurability prior to issuing the Certificate. Neither Fleming nor Arnold ever saw or received a copy of the Group Policy.

The Group Policy and the Certificate contained a "conversion privilege" that allowed

* Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

policy holders to convert their group coverage to an individual policy. The conversion privilege in the Certificate stated in relevant part:

> If your coverage ends ... you may convert your coverage to an individual policy without Evidence of Insurability. You must apply for the policy and pay the first premium within 31 days. The policy will be issued subject to the following:
>
> (a) The policy will be on one of the forms we currently offer for conversion.
>
> (b) The amount of the policy may not exceed the amount of insurance which ends.
>
> (c) The premium for the policy will be our usual rate.
>
> It will be based on the amount of insurance, risk class, type of policy and age at the policy issue date.... If you die during the time in which you are entitled to convert, we will pay the benefit that you had under the Policy. This will be done whether or not you actually applied for the individual policy.

Monumental Excerpts of R. at 92.

In early 1995, Fleming and Arnold learned FIMC was changing group insurance carriers, and coverage under the Group Policy would end. On March 9, 1995, Fleming and Arnold wrote to Monumental and indicated their intent to exercise their conversion privilege. On May 9, 1995, Robin Fitzhenry, a client service associate at Monumental, responded by mailing applications to both Fleming and Arnold. In the cover letter accompanying the applications, Fitzhenry advised Fleming and Arnold to submit monthly premiums she calculated for the men's "attained ages and an insurance coverage amount of $231,463.00." [1] Monumental Excerpts of R. at 111. On May 25, 1995, Arnold submitted his completed application along with a personal check to cover the premium due for the first month.[2] Monumental began processing the application, and Arnold's check cleared his account on July 3, 1995. Monumental did not immediately send the policy to Arnold. In June 1995, Fleming called Fitzhenry to determine when Monumental would send the policy to Arnold. After waiting another month without receiving the policy, Fleming called Fitzhenry on July 24, 1995. Fleming claims that during that conversation, Fitzhenry agreed with his calculation that the effective date of Arnold's policy was June 9, 1995, and she told him the policy would issue. Fleming memorialized this conversation in a letter to Fitzhenry dated August 1, 1995. Fitzhenry testified during her deposition that she believed Fleming's letter accurately reflected the conversation she and Fleming had on July 24, 1995. Arnold died on July 26, 1995.

On August 8, 1995, Colleen Gizinski of Monumental wrote a letter to Arnold indicating that although his conversion application requested coverage in the amount of $231,463, "according to the Conversion privilege your coverage may not exceed the amount of insurance which ends, or $18,000." Monumental Excerpts of R. at 122. The letter indicated that Arnold's individual insurance coverage was effective April 1, 1995. Gizinski enclosed with the letter Arnold's signed application on which she had crossed out $231,463 and substituted $18,000 in the space marked "Insurance Amount Desired." *See id.* at 126. She also included a check for $155.88, which she said represented overpayment of premium.

On August 25, 1995, Fleming wrote to Gizinski. In his letter, Fleming informed Monumental of Arnold's death, enclosed Arnold's death certificate, returned the $155.88 refund check, and demanded death benefits in the amount of $231,463. Monumental refused Fleming's demands.

Subsequently, Fleming filed suit against Monumental in federal district court, claiming a right, as the named beneficiary in Arnold's policy, to specific performance of policy benefits. Monumental moved for sum-

1. The applications themselves listed an insurance amount of $221,463.00–$10,000 less than the cover letter. As the applications contained a table of premium rates, Fleming used those tables to determine that based on the premium quoted, Fitzhenry made a scrivener's error on the applications. Fleming corrected the amount on the application to $231,463.00.

2. Fleming chose not to submit a completed application for life insurance in his name.

mary judgment, but the court declined to grant the motion. On November 18, 1996, the district court held a bench trial. Following the trial, the district court made findings of fact and conclusions of law, and entered judgment in favor of Fleming.

The court ultimately ordered Monumental to pay Fleming $231,463 together with prejudgment interest. The court also awarded Fleming reasonable attorney's fees.

## DISCUSSION

*The Contract*

Upon learning of Arnold's and Fleming's desire to exercise their "conversion privilege" under the Group Policy, Fitzhenry, Monumental's agent,[3] sent Fleming and Arnold applications for conversion of group life insurance. On Arnold's application, Fitzhenry filled in information such as Arnold's name, address, date of birth, group policy number, and most importantly, the amount of insurance desired—$221,463.[4] Fitzhenry understood this amount to be the outstanding balance on the mortgage held by Fleming and Arnold. The application itself also stated:

> It is understood and agreed that:
>
> 1. The Individual Life Insurance policy hereby applied for shall not be effective unless:
>
> (a) said policy is available under the Conversion Privilege of the Group Policy, and
>
> (b) the Proposed Insured is living on the effective date, and
>
> (c) the full first premium for the policy hereby applied for shall have been paid within 31 days of the date of termination of insurance under the Group Policy.
>
> * * *
>
> 4. Any Individual policy issued on this application shall not be deemed to be a continuation of the insurance under the Group Policy specified above, but shall be a new and separate contract, all of whose terms and conditions shall be operative beginning on the effective date of said policy.

Monumental Excerpts of R. at 112.

In addition, Fitzhenry sent Fleming a cover letter with the applications that stated, in relevant part:

> Enclosed please find applications for an individual policy for Life Paid Up at 95 for yourself and Paul Arnold. Please complete the sections indicated and return along with a remittance of $358.77 for yourself and $312.48 for Paul Arnold, representing 1 monthly premium(s). This amount was calculated for your attained ages and an insurance coverage amount of $231,463.00. In order to take advantage of the conversion privilege, your response should be received in our office within 30 days.

*Id.* at 111.

The application and accompanying letter contained sufficient information to objectively manifest Monumental's intent to provide Arnold with $231,463 of individual life insurance. Moreover, once Arnold received the application, he had nothing left to do but fill in a few remaining pieces of information, and return the application and deposit premium to Monumental.

After receiving the applications and cover letter from Monumental, Arnold completed the application by indicating his desired payment mode, named beneficiary, premium amount enclosed, and by signing and dating the application. On May 25, 1995, Fleming mailed Arnold's completed application to Monumental, along with a check in the amount of $312.48 payable to Monumental. Monumental received the application and cover letter on May 30, 1995. We conclude from these facts and circumstances that Arnold accepted Monumental's offer of an individual life insurance policy in the amount of $231,463. In sum, through the offer and acceptance, Monumental and Arnold expressed their mutual assent to a contract for individual life insurance in the amount of $231,463.

3. During oral argument, Monumental conceded that Fitzhenry had the authority as an agent to bind Monumental as principal.

4. See *supra*, n.1.

Monumental contends that while there is a contract between Monumental and Arnold, the contract is a result of conversion from the Group Policy to an individual policy. For this reason, Monumental argues, the terms of the contract are limited by provisions in the application, Group Policy, and Certificate. First, Monumental points to a provision in the application that states: "The Individual Life Insurance policy hereby applied for shall not be effective unless ... said policy is available under the Conversion Privilege of the Group Policy[.]" Monumental Excerpts of R. at 112. Second, Monumental points to a provision in the conversion privilege of the Certificate that states: "The amount of the policy may not exceed the amount of insurance which ends." *Id.* at 92. Finally, Monumental points to the schedule of benefits contained in the Group Policy, and claims this schedule unambiguously limits Arnold's benefits to the lesser of the balance of his loan, $231,463, or $36,000.[5] *See* Monumental Reply Br. at 5.

We disagree with Monumental's argument for several reasons. First, Monumental's contentions ignore the objective manifestations Fitzhenry made to Arnold through her application, cover letter, and confirmation of the policy. The application indicates the insurance applied for shall not be effective unless it is available under the Group Policy's conversion privilege. However, Fitzhenry sent Arnold an application and a cover letter that informed Arnold that $231,463 of individual life insurance was available to him. Moreover, the application also states that any individual policy issued on the application is not a continuation of the insurance under the Group Policy. We conclude from these facts and circumstances that Monumental's objective manifestations to provide Arnold with $231,463 of life insurance effectively supplanted any purported limitations on such coverage found in the application, Group Policy, or Certificate.[6] We thus find there was an offer and acceptance of the individual life insurance contract,[7] and Monumental must pay Arnold damages for breaching the contract.

*Damages*

The district court awarded Fleming damages in the amount of $231,463, together with pre-judgment interest. Monumental claims that in calculating these damages, the district court incorrectly relied upon the reasonable expectation doctrine, which Washington courts have expressly rejected. Further, Monumental claims that even if the district court properly applied the reasonable expectation doctrine, Fleming failed to present any evidence of such reasonable expectation.

The "reasonable expectation" doctrine provides that when an insurer creates a reasonable expectation of coverage that is not supported by the terms of an insurance policy, the expectation will prevail over the policy language. *See Cook v. Evanson,* 83 Wash. App. 149, 920 P.2d 1223, 1227 (1996) (citing *Island Associates, Inc. v. Eric Group, Inc.,* 894 F.Supp. 200, 203 (W.D.Pa.1995)). The present case does not involve a situation in

5. *Monumental arrived at this $36,000 figure by* multiplying a $1,500 monthly benefit by 24 months. These figures are contained in the Certificate. *See* Monumental Excerpts of R. at 89. This figure differs from the $18,000 maximum benefit payable figure found in the Group Policy's schedule of benefits. *See id.* at 97.

6. Monumental also claims the amount of insurance Fitzhenry placed on the application was in error, and the terms of Arnold's conversion rights cannot be expanded by an error of the insurer. In support of this contention, Monumental cites *Butler v. MFA Life Ins. Co.,* 591 F.2d 448 (8th Cir.1979), and *Halverson v. Metropolitan Life Ins. Co.,* 286 N.W.2d 531 (S.D.1979). We find these cases distinguishable. In *Butler,* the insured failed to take action necessary to convert his group policy into an individual policy, and the policy lapsed. In *Halverson,* the insured similarly failed to comply with a requirement found in her group policy before she converted to an individual policy. That is not the case here. Moreover, even if Fitzhenry mistakenly offered Arnold $231,463 of insurance, and the district court concluded she did not, such a mistake does not allow Monumental to avoid the contract. Arnold did not know of the mistake and, under the circumstances, cannot be charged with such knowledge. *See Gill v. Waggoner,* 65 Wash.App. 272, 828 P.2d 55, 58 (1992).

7. The district court alternatively found that Monumental was estopped from invoking any limiting language in the Application, Certificate and/or Group Policy. In view of our agreement with the district court that Monumental is liable on the contract, we need not pass on the district court's finding of estoppel.

which an insurer has created a reasonable expectation of coverage that is not supported by the terms of an insurance policy. Thus, we need not concern ourselves with Washington's view on the reasonable expectation doctrine.

"The general measure of damages for breach of contract is that the injured party is entitled (1) to recovery of all damages that accrue naturally from the breach, and (2) to be put into as good a pecuniary position as [the party] would have had if the contract had been performed." *Eastlake Constr. Co. v. Hess,* 102 Wash.2d 30, 686 P.2d 465, 470 (1984) (en banc) (citing *Diedrick v. School Dist. 81,* 87 Wash.2d 598, 555 P.2d 825 (1976)). As we held above, Monumental and Arnold entered into a contract whereby Monumental agreed to provide $231,463 of individual life insurance to Arnold. Monumental breached that contract when it refused to pay Fleming the benefits due under the policy. As such, Fleming is entitled to be put into the position he would occupy had Monumental performed under the contract.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.[8]

GRABER, Circuit Judge, dissenting:

I respectfully dissent from the majority's conclusion that a cover letter enclosing an application for Arnold to convert his extant group life insurance coverage to an individual policy "supplanted" the terms of the application for conversion from the group policy to an individual policy, the terms of the group policy, and the terms of the certificate of insurance. (Majority op. at 1005.)

Under Washington law, insurance policies are written contracts. *Ohio Cas. Ins. Co. v. Nelson,* 49 Wash.2d 748, 751, 306 P.2d 201, 204 (1957). When the terms of such a contract are clear, the court must enforce them as written. *Cook v. Evanson,* 83 Wash.App. 149, 152, 920 P.2d 1223, 1225, *review direct,* 131 Wash.2d 1016, 936 P.2d 416 (1997). *Whether* the terms of such a written contract are clear is a question of law to be determined by the court and reviewed *de novo. See Grange Ins. Co. v. Brosseau,* 113 Wash.2d 91, 95, 776 P.2d 123, 125 (1989) (holding that the interpretation of an insurance policy is a question of law).[1] In interpreting a policy, the court must construe the whole contract together so as to give effect to each clause. *Ross v. State Farm Mut. Auto. Ins. Co.,* 132 Wash.2d 507, 515, 940 P.2d 252, 256 (1997) (*citing Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.,)* 111 Wash.2d 452, 456–57, 760 P.2d 337, 340 (1988). By definition, the right to *convert* a group policy to an individual policy generally is a right granted by, and subject to the written terms of, the group policy. John A. Appleman, I *Insurance Law and Practice* § 126, at 417–18 (1981).

In the present case, Monumental's group policy contains a clause entitled "CONVERSION PRIVILEGE" that provides, as pertinent:

> If the Insured's coverage under this Policy ends for reasons other than:
>
> ....
>
> he may convert his coverage to an individual policy without Evidence of Insurability. He must apply for the policy and pay the first premium within 31 days after his

8. The district court also concluded Monumental did not comply with the laws and regulations of the State of Washington governing the use and marketing of the Group Policy and coverage under it. On this basis, the district court concluded the Group Policy was illegal, and this prevented Monumental from setting up terms or conditions in the Group Policy as a bar to otherwise valid claims.

As we concluded above, the offer from Monumental to Arnold, and Arnold's corresponding acceptance of that offer, created a new contract of insurance separate and apart from the Group Policy. Therefore, we hold the terms of the Group Policy do not control the terms of the new contract between Monumental and Arnold. For this reason, we need not reach the issue of whether the Group Policy violated Washington law, and, if so, the effect of that violation.

1. Accordingly, the district court's "findings of fact" numbers 11, 16, and 23 are clearly erroneous insofar as they contain legal conclusions (a) that the contract of insurance is ambiguous and (b) that Fleming's and Arnold's belief that Monumental would issue an individual policy for $231,463 without requiring evidence of insurability was *reasonable.*

insurance ends. The policy will be issued subject to the following:

. . . .

(b) *The amount of the policy may not exceed the amount of insurance which ends.*

(Emphasis added.) Although Arnold and Fleming did not receive a copy of the group policy, they did receive a Certificate of Insurance that summarized the terms of the group policy. That certificate contained essentially the same "CONVERSION PRIVILEGE" clause:

If your coverage ends for reasons other than:

. . . .

you may convert your coverage to an individual policy without Evidence of Insurability.

You must apply for the policy and pay the first premium within 31 days. The policy will be issued subject to the following:

. . . .

(b) *The amount of the policy may not exceed the amount of insurance which ends.*

(Emphasis added.)

Additionally, when Arnold applied for such conversion to an individual policy, he filled out a document that acknowledged the limitations of the group policy. The document is entitled "Application for *Conversion of Group Life Insurance*" (emphasis added), and its substantive provisions begin with this caution:

It is understood and agreed that:

1. The Individual Life Insurance policy hereby applied for *shall not be effective unless:*

(a) *said policy is available under the Conversion Privilege of the Group Policy* [.]

(Emphasis added.) The application further states that "this application shall form the basis of said policy and shall be made a part thereof." By signing the application, Arnold agreed to its terms—not to the terms of a cover letter—including the term specifying that an individual policy would not be effective unless it was available as specified in the group policy's Conversion Privilege. Under Washington law, the insured has a duty to read an insurance policy and to be on notice of its terms and conditions. *Dombrosky v. Farmers Ins. Co.,* 84 Wash.App. 245, 257, 928 P.2d 1127, 1134–35, *review denied,* 131 Wash.2d 1018, 936 P.2d 417 (1997).

The quoted portions of the insurance contract are clear and must be enforced as written. Any individual policy that Monumental issued pursuant to the Conversion Privilege was limited by the group policy creating that Conversion Privilege. The group policy, in turn, limited the Conversion Privilege to the amount of insurance provided by the group policy itself.

In my view, the only ambiguity in the written insurance contract pertains to the amount of insurance provided by the group policy in the first place. Monumental argues that the group policy provided only $18,000 in coverage. However, the Schedule of Benefits reasonably can be read to insure for any of three different amounts: $18,000; $36,000; or $48,546.96.[2] Under Washington law, an ambiguity in an insurance contract is resolved in favor of the insured. *Mutual of Enumclaw Ins. Co. v. Jerome,* 122 Wash.2d 157, 161, 856 P.2d 1095, 1096 (1993). Therefore, Arnold was entitled to obtain $48,546.96 in insurance upon converting the group coverage to an individual policy.

The next question is whether Monumental is equitably estopped from enforcing the coverage restriction contained in the written contract.[3] Under Washington law, equitable estoppel is not favored; a party asserting it must prove each element by "clear, cogent, and convincing evidence." *Henderson*

2. The $48,546.96 of coverage is based on the certificate's promise to pay an amount equal to 24 months times the "Initial Monthly Indemnity," $2,022.79, which was indicated on the first page of the certificate. No reading of the contract documents would provide for $231,463 of coverage.

3. In conclusions of law numbers 3 and 4, the district court held that Fleming had proved all the elements of estoppel.

*Homes, Inc. v. City of Bothell,* 124 Wash.2d 240, 249, 877 P.2d 176, 180 (1994). To establish estoppel here, Fleming had to prove that Monumental made an admission, statement, or act inconsistent with a claim that it asserted later; that Arnold acted in *reasonable* reliance on that admission, statement, or act; and that Arnold would be injured if Monumental were allowed to change its position. *See Ellis v. William Penn Life Assur. Co.,* 124 Wash.2d 1, 15, 873 P.2d 1185, 1192 (1994) (describing elements of equitable estoppel). I would conclude as a matter of law that Fleming failed to establish the element of *reasonable* reliance with the requisite level of proof. *See Granite State Ins. Co. v. Smart Modular Techs., Inc.,* 76 F.3d 1023, 1028 (9th Cir.1996) (holding that, when the district court is the trier of fact on a defense of equitable estoppel, its findings of fact are reviewed for clear error and its legal conclusions are reviewed *de novo* ). Fleming's reliance could not have been reasonable in the circumstances.

As noted, the contract itself is clear.[4] Arnold and Fleming had only to read the conversion application, the certificate of group insurance, and the schedule of benefits in their possession to know that the Conversion Privilege was a privilege only to switch the *existing amount of coverage* from a group to an individual format without providing further evidence of insurability. Fleming admitted that he did not read the certificate carefully.

Moreover, neither Arnold nor Fleming inquired about the correct amount of coverage, even though Fleming testified that he "really just was at a loss as to what we were entitled to" and even though he contacted Monumental about other questions. A person asserting estoppel must, under Washington law, prove not only the absence of knowledge, but also "the absence of any convenient and available means of acquiring ... knowledge" of the material facts. *Patterson v. Horton,* 84 Wash.App. 531, 544, 929 P.2d 1125, 1131 (1997). *See also Chemical Bank v. Washington Pub. Power Supply Sys.,* 102 Wash.2d 874, 905–06, 691 P.2d 524, 542 (1984) ("In order to create an estoppel it is necessary that: The party claiming to have been influenced by the conduct or declarations of another to his injury, was himself not only destitute of knowledge of the state of facts, *but was also destitute of any convenient and available means of acquiring such knowledge* ...." (internal quotation marks and citation omitted) (emphasis in original)). Fleming had the pivotal documents that would have answered his question as to the amount of coverage under the Conversion Privilege, and he also had conversations with Monumental in which his question could have been answered. He took advantage of neither means of acquiring knowledge. Therefore, Fleming failed to prove the absence of a convenient and available means of acquiring knowledge of the amount of coverage.

Finally, I must reach the insured's third major argument: that Monumental is precluded from invoking any limitation on coverage under an individual policy, because the group policy was illegal.[5] It is undisputed that the group policy was illegal in that Monumental failed to register it with the Washington Insurance Commissioner who, as a result, did not approve the group policy for marketing or use in the State of Washington.

Under Washington law, however, an insurance policy is not necessarily void for failure to follow a regulatory requirement. *See Hennessy v. Vanderhoef,* 1 Wash.App. 257, 262, 461 P.2d 581, 584 (1969) ("a contract which violates a statutory regulation of business is not void unless made so by the terms of the act") (internal quotation marks and citation omitted); Wash. Rev.Code § 48.18.510 (1998) (an insurance policy that is otherwise valid, containing a condition not in compliance with the insurance code, shall not

4. The majority suggests that Washington law is uncertain as to the adoption of a "reasonable expectation doctrine." (Majority op. at 10004). However, "Washington has never adopted the reasonable expectation policy. Rather, *we* consider how a reasonable person would interpret the policy's language, but *do not allow an insured's expectations to override the plain language of the contract.*" *Cook v. Evanson,* 83 Wash.App. at 155, 920 P.2d at 1227 (citations omitted) (emphasis added).

5. The district court so held in conclusion of law number 6.

be rendered invalid thereby, but shall be enforced as if in compliance with the insurance code). Fleming does not argue that the group policy, if registered, would have violated any substantive provision of Washington law. That being so, the group policy is not void, and the court can enforce it as written.[6] Monumental is not barred from invoking the coverage limitation contained in the Conversion Privilege clause.

For the reasons stated, I believe that the district court erred. Judgment should have been entered for Fleming only in the amount of $48,546.96. I dissent from the majority's contrary holding.

6. Moreover, the application for an individual policy used the group policy as a point of reference. Even if the application alone controlled, it used the Conversion Privilege of the group policy—whether valid or not—as a numerical benchmark.